UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CARRIE MARIE HALL,

        Plaintiff,

v.

ANTHONY DANIEALS, *et al.*,

        Defendants.

Case No. C07-5624FDB-KLS

ORDER TO SHOW CAUSE

This matter has been referred to the undersigned Magistrate Judge pursuant to Title 28 U.S.C. §§ 636(b)(1)(A) and 636(b)(1)(B) and Local Rules MJR 1, MJR 3, and MJR 4 and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72. This matter comes before the Court on defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6). (Dkt. #38). After reviewing the complaint, defendants' motion and the balance of the record, the Court hereby finds and orders as follows:

This case involves a civil rights action under 42 U.S.C. § 1983 filed by plaintiff against defendants for violating her federal constitutional rights. Specifically, she alleges in her complaint that defendants Henry Keller and Rhonda Canada violated her First Amendment right to freely exercise her religion and her right to due process under the Fourteenth Amendment, by placing her in administrative segregation for investigation of her religious practices. Plaintiff also alleges that defendants Anthony Daniels, counselor Sheridan, Sgt. Belfour, Sgt. Delgado, C/O Diggs, C/O Carol Beaucraft, C/O John Torres, C/O

ORDER
Page - 1

Henry Torres, Dr. Kakkar, Dr. Cole, and Dr. Dahlbeck violated her Eighth Amendment right against cruel and unusual punishment, by being deliberately indifferent to her medical needs and inflicting unnecessary pain upon her. Plaintiff seeks both injunctive relief and punitive damages.

Defendants argue in their motion to dismiss that plaintiff has failed to show her constitutional rights have been violated, and therefore to state a claim for which relief may be granted under the First, Eighth or Fourteenth Amendments. They further argue plaintiff has failed to allege any of them caused or personally participated in causing the harm being claimed. Defendants also assert plaintiff has failed to meet the requirements for seeking injunctive relief. Finally, defendants assert they are entitled to qualified immunity from damages. Although plaintiff failed to respond to defendant's motion – and while Local Rule CR 7 permits the Court to consider such failure as an admission that the motion has merit – for the reasons set forth below, the Court declines to do so at this time.

I. <u>Standard of Review for Motions to Dismiss</u>

The Court's review of a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6) is limited to the complaint. <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 688 (9th Cir. 2001). All material factual allegations contained in the complaint "are taken as admitted" and the complaint is to be liberally "construed in the light most favorable" to the plaintiff. <u>Jenkins v. McKeithen</u>, 395 U.S. 411, 421 (1969); <u>Lee</u>, 250 F.3d at 688. A complaint should not be dismissed under Fed. R. Civ. P. 12(b)(6), furthermore, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957).

Dismissal under Fed. R. Civ. P. 12(b)(6) may be based upon "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." <u>Balistreri v. Pacifica Police Dept.</u>, 901 F.2d 696, 699 (9th Cir. 1990). Vague and mere "[c]onclusionary allegations, unsupported by facts" are not sufficient to state a claim under 42 U.S.C. § 1983. <u>Jones v. Community Development Agency</u>, 733 F.2d 646, 649 (9th Cir. 1984); <u>Pena v. Gardner</u>, 976 F.2d 469, 471 (9th Cir. 1992). Thus, even though the Court is to construe the complaint liberally, such construction "may not supply essential elements of the claim that were not initially pled." <u>Pena</u>, 976 F.2d at 471.

A complaint is frivolous when it has no arguable basis in law or fact. <u>Franklin v. Murphy</u>, 745 F.2d 1221, 1228 (9th Cir. 1984). Before the Court "may dismiss a *pro se* complaint for failure to state a claim," however, it "must provide the *pro se* litigant with notice of the deficiencies of his or her complaint

1 and an opportunity to amend the complaint prior to dismissal." McGuckin v. Smith, 974 F.2d 1050, 1055 (9th Cir. 1992); see also Noll v. Carlson, 809 F.2d 1446, 1449 (9th Cir. 1987) (district court erred by not notifying *pro se* prisoner litigant of amended complaint's deficiencies and allowing him leave to amend). Accordingly, while, as explained below, the Court finds that dismissal of some of the claims in plaintiff's complaint under Fed. R. Civ. P. 12(b)(6) is proper here, this order to show cause is being issued to provide plaintiff with the opportunity to file a response and cure her complaint's deficiencies.

II. Standard of Review for Section 1983 Claims

To state a claim under 42 U.S.C. § 1983, a complaint must allege: (i) the conduct complained of was committed by a person acting under color of state law and (ii) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled on other grounds, Daniels v. Williams, 474 U.S. 327 (1986). Section 1983 is the appropriate avenue to remedy an alleged wrong only if both of these elements are present. Haygood v. Younger, 769 F.2d 1350, 1354 (9th Cir. 1985).

Plaintiff also must allege facts showing how individually named defendants caused or personally participated in causing the harm alleged in the complaint. Arnold v. IBM, 637 F.2d 1350, 1355 (9th Cir. 1981). A defendant cannot be held liable under 42 U.S.C. § 1983 solely on the basis of supervisory responsibility or position. Monell v. New York City Dept. of Social Services, 436 U.S. 658, 694 n.58 (1978). A theory of *respondeat superior* is not sufficient to state a section 1983 claim. Padway v. Palches, 665 F.2d 965, 968 (9th Cir. 1982).

III. Plaintiff's First Amendment Claim

In her complaint, plaintiff claims her First Amendment right to freely exercise her religion and her Fourteenth Amendment right to due process were violated, when defendants Keller and Canada placed her in administrative segregation for investigation of her religious practices as a Wiccan. (Dkt. #10, p. 4). In particular, plaintiff asserts she was being investigated by both defendants for "casting spells" and 'trying to poison other inmates." (Dkt. #10, p. 4). In addition, plaintiff asserts that no other inmate had ever been placed in administrative segregation for the purpose of investigating religion.

Defendants argue plaintiff has failed to allege defendant Keller and defendant Canada personally participated in placing her in administrative segregation, or limited her practice of religion in any specific way. The Court disagrees that plaintiff has failed to sufficiently allege the personal participation of both

defendants. Indeed, plaintiff expressly states in her complaint that they had her placed in administrative segregation, despite the efforts of other prison staff members who attempted to help her with respect to her claim that she was being harassed by other inmates for being a Wiccan. As to whether defendants Keller and Canada actually limited her religious practice, the sufficiency of plaintiff's claims is less clear in that regard.

To establish her right to freely exercise her religion under the First Amendment has been violated, plaintiff must show defendants "burdened the practice of [her] religion, by preventing [her] from engaging in conduct mandated by [her] faith." Freeman v. Arpaio, 125 F.3d 732, 736 (9th Cir. 1997); Graham v. C.I.R., 822 F.2d 844, 850-51 (9th Cir. 1987) (government action burdens prisoner's practice of religion if he or she is prevented from engaging in conduct mandated by his or her faith). "In order to reach the level of a constitutional violation," furthermore, "the interference with one's practice of religion 'must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief that is central to religious doctrine." Freeman, 125 F.3d at 737 (quoting Graham, 822 F.2d at 851).

At the outset, however, plaintiff must establish the particular religious conduct or practice at issue is mandated by her faith. This involves two criteria. First, plaintiff must demonstrate that her "proffered belief" is "sincerely held." Malik v. Brown, 16 F.3d 330, 333 (9th Cir. 1994). As observed by the Ninth Circuit, the First Amendment does not extend to religions that "are obviously shams and absurdities and whose members are patently devoid of religious sincerity." Id. (citations and internal quotes omitted). Second, plaintiff must show that her religious exercise claim is "'rooted in religious belief, not in 'purely secular' philosophical concerns.'" Id. (quoting Wisconsin v. Yoder, 406 U.S. 205, 215-16 (1972)). As to this second criteria, determining whether plaintiff's claim is "rooted in religious belief" requires analyzing whether it is related to her "sincerely held religious belief." Id.

With respect to the above inquiry, the Supreme Court has noted that "[t]he determination of what is a 'religious' belief or practice is more often than not a difficult and delicate task." Thomas v. Review Bd. of Indiana Employment Security Sec. Division, 450 U.S. 707, 714 (1981). Further, since "religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection," the resolution of the above question should not "turn upon a judicial perception of the particular belief or practice in question." Id. That is, because "[i]nterfaith differences . . . are not uncommon among followers of a particular creed," and because "the judicial process is singularly ill

equipped to resolve such differences in relation to the Religion Clauses," the guarantee of free exercise of religion "is not limited to beliefs which are shared by all of the members of a religious sect." Id. at 715-16. In other words, "[c]ourts are not arbiters of scriptural interpretation." Id. at 716.

Although neither party define exactly what a "Wiccan" is, defendants do not contest that plaintiff's beliefs are sincerely held. By implication, therefore, defendants also do not contest that being Wiccan in plaintiff's situation involves the practice of religion. Defendants argue, though, that plaintiff has failed to show that she was prohibited from practicing any tenet of her religion while in administrative segregation. The Court agrees. Plaintiff has not claimed that she was prevented, deliberately or otherwise, from being able to practice her religion while there. Nor does she actually claim that casting spells and attempting to poison others – for which she alleges she was placed in administrative segregation – are themselves tenets of her religion. Accordingly, while it could be argued that being placed in administrative segregation itself might constitute an impingement on the practice of one's religion, plaintiff has not demonstrated that any burden on her religious practices have been substantial.

IV.     Plaintiff's Fourteenth Amendment Claim

For Fourteenth Amendment due process analysis purposes, a prisoner has "a liberty interest under the federal constitution when a change occurs in confinement that imposes an 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'" Resnick v. Hayes, 213 F.3d 443, 448 (9th Cir. 2000) (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995); Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003). A prisoner, however, has "no constitutional right to a particular classification status." Hernandez v. Johnston, 833 F.2d 1316, 1318 (9th Cir. 1987); see also Moody v. Daggett, 429 U.S. 78, 88 n. 9 (rejecting claim that prisoner classification in federal system invoked due process protections); Smith v. Noonan, 992 F.2d 987, 989 (9th Cir. 1993) (no liberty interest under federal constitution to be free from administrative segregation). This is because a plaintiff's classification is not an atypical hardship, since a prisoner has "no liberty interest in freedom from state action taken within the sentence imposed," which includes being placed in administrative segregation. May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997) (quoting Sandin, 515 U.S. at 480 (discussing prior decisions holding that inmates have no due process right to avoid administrative segregation and remain in prison general population).

Although not entirely clear, as pointed out by defendants, plaintiff may be claiming that she was placed in administrative segregation in violation of her Fourteenth Amendment due process rights. As

1 noted above, defendants' argument that plaintiff has failed to sufficiently alleged defendants Keller and
2 Canada personally participated in placing her in administrative segregation is without merit, because she
3 expressly stated that they did so. Also as noted above, however, plaintiff has no liberty interest in being
4 free from placement in administrative segregation, and therefore no due process right to a particular
5 classification status. Accordingly, plaintiff has failed to state a valid Fourteenth Amendment due process
6 claim here as well.

V. <u>Plaintiff's Eighth Amendment Claims</u>

The Eighth Amendment prohibits those "punishments which are incompatible with 'the evolving standards of decency that mark the progress of a maturing society . . . or which involve the unnecessary and wanton infliction of pain." <u>Estelle v. Gamble</u>, 429 U.S. 97, 102-03 (1976) (citations omitted). To state a claim under the Eighth Amendment, plaintiff must satisfy two requirements. First, the deprivation being alleged "must be, objectively, 'sufficiently serious.'" <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994) (citation omitted). That is, the prison official's "act or omission must result in the denial of 'the minimum civilized measure of life's necessities.'" <u>Id.</u> For claims based on failure to prevent harm, the inmate also must show he was "incarcerated under conditions posing a substantial risk of serious harm." <u>Id.</u>

In addition to this "objective component," there is a subjective one. <u>Keenan v. Hall</u>, 83 F.3d 1083, 1089 (9th Cir. 1996). The prison official thus also "must have a 'sufficiently culpable state of mind.'" <u>Farmer</u>, 511 U.S. at 834 (citation omitted); <u>Helling v. McKinney</u>, 509 U.S. 25, 33 (1993) ("[A] claim that a prisoner's confinement violate[s] the Eighth Amendment requires an inquiry into the prison officials' state of mind."). This state of mind "is one of 'deliberate indifference' to inmate health or safety." <u>Farmer</u>, 511 U.S. at 834. In other words, liability under the Eighth Amendment "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" <u>Id.</u> at 835 (citation omitted). An official, therefore, will not be liable:

> [U]nless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harms exists, and he must also draw the inference.

<u>Id.</u> at 837; <u>see also</u> <u>Wallis v. Baldwin</u>, 70 F.3d 1074, 1077 (9th Cir. 1995). A prison "official's failure to alleviate a significant risk that he should have perceived but did not," therefore, cannot "be condemned as the infliction of punishment." <u>Id.</u> at 838.

Plaintiff claims defendant Daniels ordered her to move to another unit, which she asserts he knew was unnecessary and would upset her. Instead, plaintiff chose to go to administrative segregation. While waiting "on the dayroom floor" to be taken there, plaintiff claims defendant Sheridan closed all of the cell doors in her unit except for hers. (Dkt. #10, p. 4). Upon realizing this, plaintiff states she then went into her cell planning to commit suicide, and began swallowing "handfulls of benodryl" in front of defendant Diggs. Id. Plaintiff claims that "within minutes" she was "layed out on the floor," that her body began convulsing, and that she was in and out of consciousness for over an hour and a half. Id. Plaintiff further claims that defendants Daniels, Sheridan, Belfour and Beaucraft "were all still in the unit aware of" her "condition, reported from" defendant Diggs, "yet no one called for a nurse." Id.

Defendants argue plaintiff fails to state here how any of the above named defendants were aware of her suicide attempt or indifferent to her medical needs, and thus how they violated her constitutional rights. The Court disagrees. As noted above, plaintiff claims she swallowed handfulls of her medication in front of defendant Diggs. Even if this was not enough to put defendant Diggs on notice that plaintiff might be trying to harm herself, plaintiff further claims defendant Diggs reported her condition – which included being "layed out on the floor" in and out of consciousness and convulsing for over an hour and a half – to defendants Daniels, Sheridan, Belfour and Beaucraft. Thus, plaintiff also sufficiently claims that these other defendants were aware of her condition as well. As such, even without liberally construing those allegations in the light most favorable to plaintiff, it hardly can be said that these defendants were unaware that a substantial risk of serious harm to her health and safety existed.

Plaintiff next claims that despite being unable to respond, "a team of officers" then came in and physically assaulted her and sprayed her with pepper spray for over 30 minutes. She further claims that "the staff I remember being present while they assulted [sic] & sprayed me, were, Sgt. Delgado, who was giving all the orders, c/o Toress Henry, & c/o Torres John." Id. Plaintiff claims there were many other officers there as well, but is not able to recall all of them. Although the Court agrees with defendant that this is insufficient to show these defendants were aware of plaintiff's medical needs regarding her suicide attempt and medical condition resulting therefrom, she does sufficiently allege they were part of the team that physically assaulted her and sprayed her with pepper spray for over half an hour. Accordingly, this is sufficient to state a valid separate Eighth Amendment claim.

Finally, plaintiff alleges defendants Dahlbeck and Kakkar, respectively the medical director and

doctor in charge of her during the time directly following the suicide attempt, "came up with a plan that was very destructive to" her "mental stability." Id. at p. 5. Specifically, plaintiff claims they did not allow anyone, "including staff," to "come in and see . . . or check on" her. Id. She further claims that defendant Kakkar "made a statement of: you see Carrie this is like a game of poker the stakes have just been raised." Id. Plaintiff also alleges she tried to be placed in protective custody to "get away from" the "destructive behavior" of defendants Dahlbeck and Kakkar, that "while on suicide watch" she "went three weeks with out [sic] any soap," and that due to this and the "lack of medical attention," she contracted methicillin-resistant Staphylococcus aureus ("MRSA"), with a 102.6 temperature, and her face became "permanently scarred." Id.

Defendants argue that while plaintiff's claims evince a disagreement with defendant Dahlbeck and defendant Kakkar about her medical care, they do not rise to the level of a constitutional violation. Again, the Court disagrees. The state "has an obligation to provide medical care" to those within its custody, and therefore "cannot be deliberately indifferent to the medical needs of its prisoners." Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000); McGuckin, 974 F.2d at 1059. However, "not every breach of that duty is of constitutional proportions." Lopez, 203 F.3d at 1131 (quoting Estelle, 429 U.S. at 104 (1976)).

To state a cognizable Eighth Amendment claim in this context, a prisoner thus "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106; see also Lopez, 203 F.3d at 1131 (deliberate indifference to serious medical needs must be shown); McGuckin, 974 F.2d at 1059. Prison officials are "deliberately indifferent" to "serious medical needs" when they "deny, delay, or intentionally interfere with medical treatment." Lopez, 203 F.3d at 1131. Deliberate indifference also may be shown "by the way in which prison physicians provide medical care." McGuckin, 974 F.2d at 1059.

On the other hand, "[m]ere negligence in diagnosing or treating a medical condition, without more," does not implicate the Cruel and Unusual Punishment Clause of the Eighth Amendment. Lopez, 203 F.3d at 1131; see also O'Loughlin v. Doe, 920 F.2d 614, 617 (9th Cir. 1990) (isolated occurrences of neglect do not amount to constitutional violation); Frost v. Agnos, 152 F.3d 1124, 1130 (9th Cir. 1998) (mere negligence in providing medical care does not violate constitution). By contrast, "a finding that the defendant repeatedly failed to treat an inmate properly or that a single failure was egregious strongly

suggests that the defendant's actions were motivated by 'deliberate indifference' to the prisoner's medical needs." McGucken, 974 F.3d at 1060-61.  Thus, the determination as to whether deliberate indifference exists "involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." Id., 974 F.2d at 1059.

A "serious" medical need will be found to exist "if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" Id. (quoting Estelle, 429 U.S. at 104).  The following examples are indications that a prisoner's need for medical treatment is "serious":

> The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.

Id. at 1059-60.  As noted above, deliberate indifference to a prisoner's serious medical need requires "a purposeful act or failure to act on the part of the defendant." Id. at 1060.  In other words, "[a] defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need." Id.

The Court finds plaintiff's Eighth Amendment claims against defendants Dahlbeck and Kakkar meet those requirements here.  As noted above, plaintiff alleges those defendants came up with a treatment plan that was very destructive to her mental stability following her suicide attempt.  Also as noted above, she alleges that while on suicide watch, when apparently she was still under their care, she went three weeks without any soap or medical attention, which she claims caused her to contract MRSA, leaving her face permanently scarred. Id.  Although the involvement of defendant Dahlbeck and Kakkar here may not be as specifically plead as those of the other defendants discussed above, liberally viewing her claims in the light most favorable to her, plaintiff's allegation of deliberate indifference to her medical needs also should survive defendants' motion to dismiss.

VI.  Defendant Cole

Although plaintiff names defendant Cole in her complaint, she does not set forth anywhere therein any facts showing how defendant Cole caused or personally participated in causing any violations of her constitutional rights.  As such, the Court finds plaintiff has failed to show how defendant Cole is subject to liability under 42 U.S.C. § 1983.

VII.  Plaintiff's Request for Injunctive Relief

As noted above, plaintiff has requested relief in the form of an injunction from physical and

mental harm. (Dkt. #10, p. 6). Title 18, section 3626 states:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C. § 3626(a)(1). To successfully request prospective injunctive relief, plaintiff must show that the threat is real and immediate, not conjectural or hypothetical. <u>Orantes-Hernandez v. Thornburgh</u>, 919 F.2d 549, 557 (9th Cir. 1990); <u>Kaiser v. County of Sacramento</u>, 780 F.Supp. 1309, 1311 (E.D. Cal. 1991).

Defendants argue plaintiff's request for injunctive relief fails, because she has not articulated what exactly she seeks to prevent them from doing in the future or how the requested injunction would address the alleged constitutional violations. In addition, defendants assert plaintiff has not proposed a narrowly drawn form of injunctive relief, which extends no further than necessary to correct the alleged violation, and which is the least intrusive means necessary to correct it. The Court agrees. As noted above, all that plaintiff requests is an injunction consisting of relief from mental and physical harm. She does not state against whom the injunction is to be applied or what specific constitutional harms it is designed to correct, let alone narrowly draw that prospective relief in the least intrusive manner possible. Nor has plaintiff provided any facts to indicate that, despite what may have occurred in the past, any alleged future threat to her is real and immediate and not conjectural or hypothetical.

VIII. <u>Qualified Immunity</u>

Defendants argue they are entitled to qualified immunity with respect to plaintiff's claims. Under the doctrine of qualified immunity, state officials "performing discretionary functions [are protected] from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982); <u>Somers v. Thurman</u>, 109 F.3d 614, 617 (9th Cir. 1997). However, because, for the reasons set forth above, plaintiff is being ordered to amend her complaint to cure the deficiencies contained therein, the Court need not address this issue at this time, and declines to do so.

Accordingly, due to the deficiencies described above with respect to plaintiff's First Amendment claims, defendant Cole, and plaintiff's request for injunctive relief, the Court will not serve the complaint.

Instead, plaintiff shall file an amended complaint, curing, if possible, the above noted deficiencies, or show cause explaining why this matter should not be dismissed by **no later than September 5, 2008**. The amended complaint must carry the same case number as this one. **Plaintiff is warned, however, that failure to so respond to this order by the above date will be treated as an admission that defendants' motion to dismiss has merit, and therefore will result in a recommendation that defendants' motion be granted.** It further will be recommended that any such dismissal of this action, will be a dismissal of the complaint as being frivolous pursuant to 28 U.S.C. § 1915, and such dismissal will count as a "strike" under 28 U.S.C. § 1915(g).

Plaintiff is advised that an amended pleading operates as a *complete* substitute for an original pleading. See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992) (citing Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1546 (9th Cir. 1990) (as amended), *cert. denied*, 506 U.S. 915 (1992). Thus, if plaintiff chooses to file an amended complaint, the Court will not consider his original complaint.

The Clerk is directed to send plaintiff the appropriate forms so that she may file an amended complaint. The Clerk is further directed to send a copy of this Order to plaintiff and counsel for defendants.

DATED this 6th day of August, 2008.

Karen L. Strombom
United States Magistrate Judge